

EXHIBIT A

RECEIVED
2006 MAY -9 P 1:46
DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT...

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ASHLEY H. THOMPSON, mother )
& JUSTIN THOMPSON, minor child )
& JORDAN THOMPSON, minor child )   CASE NO. 2:06CV420-A
& RONALD C. THOMPSON, husband )   Demand for Jury Trial
                              )
    Plaintiff(s),             )
                              )
v.                            )
                              )
GEO MARINE, INC               )
& Ruben Garza, Chief Executive Officer )
    Defendant(s),             )

## COMPLAINT

### Parties

1.  The plaintiff and defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs. This court has jurisdiction of this matter pursuant to 28 USC Sec. 1332 (diversity of citizenship).

2.  Plaintiffs, Ashley H. Thompson, her husband Ronald C. Thompson, their minor children, Justin Thompson and Jordan Thompson are residents of Prattville, in the State of Alabama.

3.  Defendants are Geo Marine Incorporated, a corporation headquartered in Plano, Texas, with offices in Las Vegas, NV, El Paso, TX, San Antonio, TX, Knoxville, TN, Newport News, VA, and Panama City, FL, and Ruben Garza, the Chief Executive Officer of Geo Marine Incorporated, as well as the driver of the accident vehicle. Mr. Garza resides in Plano, TX.

## COUNT ONE

### Negligence

4. Plaintiff(s) reaffirms and re-alleges each and every preceding paragraph as set forth herein.

5. Plaintiff Ashley Thompson was properly operating the family motor vehicle on or about August 18, 2005, traveling on Highway US 31 at or near the intersection of Interstate 65, Exit 186, and Highway US 31, Prattville, AL. The minor child, Justin Thompson, was in the car with her.

6. Defendant(s) was operating the company vehicle, and stopped at the stop sign at Interstate 65, northbound exit ramp.

7. Plaintiff Ashley Thompson was properly traveling and operating the motor vehicle in the right hand lane of US 31, within the posted speed limit.

8. Defendant(s) proceeded past the stop sign and into the intersection without insuring first that there was no conflicting traffic, thus failing to yield the right of way.

9. Defendant(s) had a duty to safely operate the vehicle, and breached this duty by negligently failing to yield the right of way to Plaintiff's vehicle.

10. Defendant(s) was negligently operating a company vehicle, which slammed into the Plaintiff's vehicle.

11. As a proximate result of the Defendant'(s) said negligence, Plaintiff Ashley Thompson suffered pain and continuing disability. She also incurred medical and property damage expenses. The minor child Justin Thompson suffered minor injuries, incuring pain and medical expenses.

Wherefore, Plaintiff(s) demands judgment against Defendant(s) for such sum of compensatory damages as the court or jury may find to be just and reasonable, plus court costs.

## COUNT TWO

### Wantonness

12. Plaintiff(s) reaffirms and re-alleges each and every preceding paragraph as set forth herein.

13. On or about August 18, 2005, at or near the intersection of Interstate 65, Exit 186, and Highway US 31, Prattville, AL, Defendant(s) did wantonly operate a motor vehicle so as to allow the same to collide with the motor vehicle operated by Plaintiff Ashley Thompson, accompanied by the minor child Justin Thompson.

14. As a proximate result of the Defendant'(s) said wantonness, Plaintiff Ashley Thompson suffered pain and continuing disability. She also incurred medical and property damage expenses. The minor child Justin Thompson suffered minor injuries, incurring pain and medical expenses.

Wherefore, Plaintiff(s) demands judgment against Defendant(s) for such sum of compensatory and punitive damages as the court or jury may find to be just and reasonable, plus court costs.

## COUNT THREE

### Loss of Consortium

15. Plaintiff reaffirms and re-alleges each and every preceding paragraph as set forth herein.

16. On or about August 18, 2005, at or near the intersection of Interstate 65,

Exit 186, and Highway US 31, Prattville, AL, Defendant(s) did negligently or wantonly operate a motor vehicle so as to allow the same to collide with the motor vehicle operated by Plaintiff Ashley Thompson, accompanied by the minor child Justin Thompson.

17. Plaintiff Ashley Thompson suffered pain, and continuing disability.

18. As a proximate result of the Defendant'(s) said negligence or wantonness, the husband, Ronald Thompson, and the two minor children were caused to lose the consortium and society of the wife and mother, Ashley Thompson.

Wherefore, Plaintiff(s) claims punitive damages of the Defendant(s) because of the Defendant'(s) said conduct as the court or jury may find to be just and reasonable, plus court costs.

Plaintiff respectfully demands trial by jury of all the issues in this action.

Respectfully submitted this __9__ day of __May__, 2006.

_____
Stanley A. Moorhouse (MOO083)
Attorney for the Plaintiffs

Nelson Law, LLC
25 S Court St
Montgomery AL 36104
Ph 334 834 5700
Fx 334 834 5533

Page 29

1    know how you would categorize it.
2  Q. Anything unusual about it?
3  A. No.
4  Q. Do you drive on that road at that time of
5     day on a fairly frequent basis?
6  A. Yes.
7  Q. So there wasn't anything about the traffic
8     or the traffic flow that was unusual to
9     you?
10 A. No.
11 Q. So tell me -- you were traveling on 31?
12 A. Yes, sir.
13 Q. Which direction were you going?
14 A. Northbound
15 Q. And you were headed back to your house?
16 A. Yes, sir.
17 Q. And was the last place you had been before
18    that your father's house?
19 A. I was at a job that he was at. I had went
20    to see him on a job.
21 Q. And what would be the route that you would
22    have been taking to get to your house?
23 A. Going down 31 and turning left on 40, go 40

Page 30

1     all the way to 63 and I live on 63.
2  Q. All right. Did you have a cell phone with
3     you?
4  A. No, sir.
5  Q. Do you own a cell phone?
6  A. Not at this time I don't.
7  Q. Let me ask you this. Did you have a cell
8     phone at that time?
9  A. No, sir.
10 Q. Okay. And had you made any stops after
11    seeing your father and the accident?
12 A. No, sir.
13 Q. Did your windshield have any type of cracks
14    or obstructions on it?
15 A. No, sir.
16 Q. And the weather was clear?
17 A. Yes, sir.
18 Q. Tell me what happened. Tell me how the
19    accident happened.
20 A. I was driving down the road and he pulled
21    out in front of me. I wasn't probably two
22    or three foot when he pulled out in front
23    of me.

Page 31

1  Q. Now, when you say he, you're talking about
2     Mr. Garza?
3  A. Yes, sir.
4  Q. Tell me where he was coming from.
5  A. Off of the ramp, off of I-65.
6  Q. And was he coming off the ramp -- in other
7     words, was he coming up from the south or
8     coming down from the north?
9  A. He was coming up from the south.
10 Q. And that intersection where the wreck
11    happened, is it controlled by any type of a
12    stop sign or a traffic signal?
13 A. Stop sign.
14 Q. Is this Exit 186?
15 A. Yes.
16 Q. That's what the complaint says, and I --
17 A. Yes.
18 Q. I think I may have taken some pictures of
19    the wrong place. I want to make sure we're
20    talking about --
21 A. I had to sit there and go through the exits
22    real quick.
23 Q. So Exit 186 is the right one?

Page 32

1  A. Yes.
2  Q. And that's not the main Prattville exit?
3  A. No. It's the last Prattville exit,
4     Prattville/Pine Level.
5  Q. So at that particular intersection, it's
6     controlled by a stop sign --
7  A. Yes.
8  Q. -- that Mr. Garza would have had facing him
9     as he came to the intersection?
10 A. Yes.
11 Q. There's no traffic light there?
12 A. No.
13 Q. And if Mr. Garza -- First of all, did you
14    see him at the stop sign?
15 A. Yes.
16 Q. Did you see him stopped at the stop sign?
17 A. Yes.
18 Q. And would he have been off to your left?
19 A. He would have been at my right.
20 Q. He would have been at your right.
21    Okay. So when was the first time that
22    you saw Mr. Garza's -- He was driving a
23    pickup truck; right?

Page 33

1   A.  Yes.
2   Q.  When was the first time you saw him?
3   A.  When I looked up. When I was driving down
4       the road and seen him pull up to the stop
5       sign and then he stopped and I was going
6       through traffic and then he proceeded to
7       pull out in front of me.
8   Q.  Which lane were you in, Mrs. Thompson?
9   A.  The right lane.
10  Q.  The outside lane?
11  A.  Yes.
12  Q.  And was anybody else in the car with you
13      other than Justin?
14  A.  No.
15  Q.  Did you have anything to eat or drink
16      inside the car?
17  A.  I had a drink in my console.
18  Q.  What kind of drink?
19  A.  Just a Coke. Like Styrofoam cup that I
20      brought from the house that was filled with
21      Coke.
22  Q.  Had you taken any either prescription or
23      nonprescription medication in the 24 hours

Page 34

1       prior to the accident?
2   A.  No.
3   Q.  Had you had anything alcoholic to drink in
4       the 24 hours prior to the accident?
5   A.  No.
6   Q.  At the time of the wreck, were you taking
7       any type of prescription medication on a
8       daily basis?
9   A.  No.
10  Q.  And I don't want to know -- you know, birth
11      control pill or anything like that wouldn't
12      really matter to me but if you had -- Let
13      me just give you some examples. Any type
14      of allergy medication or anything like that
15      that you may be taking?
16  A.  No.
17  Q.  At the time of the accident, did you have
18      any type of health problem that required
19      regular medical treatment?
20  A.  No.
21  Q.  After you saw Mr. Garza stop at the stop
22      sign, do you have an estimate as to how far
23      away from the intersection you were?

Page 35

1   A.  I had just come off the bridge. So maybe
2       20, 25 foot.
3   Q.  And did you see Mr. Garza prior to the
4       wreck? Actually see him, not just his
5       car.
6   A.  No. All I seen was his vehicle.
7   Q.  So you can't tell us anything that he may
8       have been doing inside his vehicle?
9   A.  No.
10  Q.  Could you tell if he had a passenger in the
11      vehicle?
12  A.  I don't know.
13  Q.  After Mr. Garza stopped at the stop sign,
14      do you know if there was any traffic going
15      in the same direction as you that passed by
16      him?
17  A.  I don't believe so.
18  Q.  Did you notice any traffic that was coming
19      from the opposite direction of you on 31?
20  A.  There were cars coming. But, I mean, once
21      he pulled out, I don't remember anything
22      after that.
23  Q.  But you did see him come to a full stop at

Page 36

1       the stop sign?
2   A.  As much as I could just seeing a car pull
3       up to the stop sign.
4   Q.  Okay. Well, you're not saying that he ran
5       through the stop sign without stopping?
6   A.  No. No.
7   Q.  But for some reason as you were coming up
8       to him, he pulled out and y'all were
9       involved in this wreck?
10  A.  Yes, sir.
11  Q.  Do you have an estimate as to how far away
12      you were from him when he began pulling
13      out?
14  A.  Approximately two to three feet.
15  Q.  Very close?
16  A.  Very close.
17  Q.  At that intersection where the accident
18      happened, Mrs. Thompson, did you see any
19      vehicles that were stopped at or near the
20      intersection other than Mr. Garza?
21  A.  There might have been a car in the lane
22      coming this way like -- I don't know how I
23      would say it. Like where the exit goes

**Page 37**

1  back off to the Clanton exit, there may
2  have been traffic coming that way. But I'm
3  not sure if they were stopped or not, but I
4  know that there was quite a bit of traffic.
5  Q. And 31 at that point where that road is is
6  it just a two-lane highway?
7  A. Yes, sir.
8  Q. And if there was a vehicle stopped coming
9  towards you, you're just not sure if that
10 happened or not?
11 A. I'm not exactly sure.
12 Q. Okay. Is there a -- I guess an entrance
13 ramp opposite from Mr. Garza where you can
14 get back on the interstate?
15 A. Yeah.
16 Q. When Mr. Garza began pulling out, did you
17 have time to do anything to try to avoid
18 the wreck?
19 A. Hit my brakes.
20 Q. Do you know if you left any skid marks
21 there at the accident scene?
22 A. Like a foot long, I think, they said there
23 were.

**Page 38**

1  Q. The brakes on your car, do you know if they
2  locked up?
3  A. I would assume so considering the brake
4  pedals were broke.
5  Q. Do you know if that car has antilock
6  brakes?
7  A. I have no idea.
8  Q. Is it fair to say that when he began
9  pulling out you went into an emergency
10 braking situation?
11 A. Yes.
12 Q. And you hit the brakes about as hard as you
13 could?
14 A. Yes.
15 Q. Did you attempt to steer in any way to
16 avoid the wreck? I'm not saying you could
17 or couldn't or should have. I'm just
18 wondering if you did try.
19 A. I veered this way trying to miss him,
20 because he had pulled out like this and I
21 was trying to go around him like this and
22 that's when he hit.
23 Q. All right. What you're gesturing it sounds

**Page 39**

1  like is you tried to veer a little bit to
2  the right and tried to get behind him?
3  A. Yeah.
4  Q. Okay. There just wasn't time to do that?
5  A. There wasn't time to do anything.
6  Q. How fast do you think you were going before
7  you hit your brakes?
8  A. Probably 50, 55.
9  Q. Did you have your cruise control on?
10 A. No.
11 Q. Do you know of any witnesses to the
12 accident other than yourself and Mr. Garza?
13 A. I don't -- I don't remember. I mean, I
14 know there was people coming up, but I
15 don't know who actually witnessed the wreck
16 and who didn't.
17 Q. There's a witness listed as a Richard Long
18 from Theodore, Alabama. Do you know who he
19 is?
20 A. Huh-uh (negative response).
21 Q. Has anybody told you since the accident
22 that they saw it or knew somebody that saw
23 it or anything like that?

**Page 40**

1  A. No.
2  Q. Did your air bags discharge in the
3  accident?
4  A. Yes, sir.
5  Q. And did that Honda -- did it have a
6  passenger side air bag as well?
7  A. Yes, sir.
8  Q. Did that one discharge?
9  A. Yes, sir.
10 Q. Did you lose consciousness after the
11 accident?
12 A. For three to five minutes afterwards.
13 Q. How do you know that?
14 A. Because I woke up to somebody beating on my
15 window.
16 Q. Okay. How do you know that it was three to
17 five minutes?
18 A. I just guesstimated with the paramedics and
19 the volunteer fire department. They said
20 that it took them three to five minutes to
21 get on the scene, and I was still in my car
22 when they got there.
23 Q. Do you actually remember the impact itself?

10 (Pages 37 to 40)


EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ASHLEY H. THOMPSON, mother,   *
JUSTIN THOMPSON, minor child,   *
JORDAN THOMPSON, minor child,   *
and RONALD C. THOMPSON,   *
husband,   *
  *
    Plaintiffs,   *
  * CIVIL ACTION NO. 2:06-cv-420-WHA
v.   *
  *
RUBEN GARZA,   *
  *
    Defendant.   *

STATE OF TEXAS    )
    )
COUNTY OF COLLIN  )

## AFFIDAVIT OF RUBEN G. GARZA

My name is Ruben G. Garza. I am an adult resident of the State of Texas. I have personal knowledge of the matters contained in this affidavit.

On August 17, 2005, I was involved in an automobile accident near Prattville, Alabama. After dropping off my grandson at Auburn University-Montgomery, I was traveling north on I-65 looking for a particular exit. I missed the exit I was looking for and proceeded to the next exit in order to make a U-turn to get back on the interstate and head back in the opposite direction. The exit where I was going to make the U-turn is an east-west highway overpass. As I exited I-65 to turn around, I came to a stop at the stop-sign at the end of the exit ramp with my left blinkers on. As I came to a stop, I

noticed a car traveling from my right to my left. I came to a full stop at the stop sign and was waiting for the car to go by before making my left turn. The approaching car (on my right) came to a complete stop for no apparent reason before reaching the front of my vehicle. There were no stop signs for the vehicles traveling east-west over the overpass. I kept looking at the car that came to a complete stop slightly to my right waiting for the vehicle to continue since the vehicle had the right of way. The driver of the vehicle then waved with his hand for me to make my left turn. I assumed that he was having vehicle problems. I also assumed that it was clear for me to make the left turn and proceeded with the turn. As I started to make the turn I looked to my left and saw the incoming car driven by Ashley Thompson and it hit my vehicle on the front left tire well. I did not realize the vehicle driven by Ashley Thompson was approaching from my left until I had started pulling out into the intersection and could not avoid the accident.

_____
RUBEN G. GARZA

SUBSCRIBED AND SWORN TO BEFORE ME on this 26th day of February, 2007, to certify which witness my hand and seal of office.



_____
NOTARY PUBLIC
My Commission Expires: July 28, 2008

(SEAL)